We'll call the first case, Alfredo Semper versus Curtis V. Gomez in the United States of America. Mr. Simpson. Good morning and may it please the court. Andrew Simpson on behalf of Alfredo Semper. I would like to reserve four minutes for rebuttal.  Your honors, in Marbury versus Madison, Chief Justice Marshall wrote, The government of the United States has been emphatically termed a government of laws and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right. 210 years later, we are presented with that situation. Don't you have a right under the CSRA to adjudicate the claim that you filed that's before us? We've already been precluded under the CSRA from pursuing a damages claim. The issue before the court is whether Mr. Semper can assert an equitable claim for relief, declaratory and injunctive relief, outside of the CSRA. And we assert that it falls between the Fausto case and the Elgin case because under Webster v. Doe, the Supreme Court said, you cannot deny a right of judicial review to a constitutional claim without clearly expressed congressional intent to do so. What about under the Virgin Islands District Court's EDR plan? It does not apply. Why is that? Well, first of all, it was waived because it was never asserted below. And subject matter jurisdiction where there's a non-statutory basis for waiver or basis for exhaustion can always be waived. But second of all, under its plain terms, it does not apply. It applies to the rights that are, quote, enumerated in the plan. And the personnel practices that are enumerated in the plan are recruitment, hiring, promotion, advancement and temporary appointments. It does not apply to terminations. And there's a reason for that. Because traditionally, federal judicial employees have not been subject to any restriction on termination other than the will of the judge. Yeah, the Supreme Court's ruling in Fausto Bush and Elgin, I think Elgin or Elgin. Yes. Requires to conclude that the claim for injunctive and declaratory relief claims cannot be brought in a lawsuit as such. No, no, Your Honor. I don't believe that's what they held. They held because Mr. Elgin had a remedy in the CSRA where he could go to the Merit Systems Protection Board and he would then have judicial review of his constitutional claim on appeal, for the first time judicial review, on appeal. That was sufficient to meet the requirements of Webster v. Doe. He is going to get judicial review of his constitutional claim. Now, under Fausto, Mr. Fausto did not present a constitutional claim and the Supreme Court did not reach the issue of what would happen in his situation if he's trying to get judicial review of a constitutional claim and he's foreclosed by his damages claim for the CSRA. I think the clear reading of the two cases is there must be judicial review of a constitutional claim. I noted from Elgin this language. The CSRA statutory review scheme is exclusive even for employees who bring constitutional challenges. That sounds like you. But, Your Honor, it said that in the context of Elgin who was able to get review of his judicial, his constitutional claim, was able to get judicial review on appeal. But it clearly also says, it clearly indicated, it distinguished Fausto and said we weren't presented with a situation in Fausto where he was only pursuing a damages claim and he couldn't get any review of that. Mr. Semper is more like Fausto because he cannot get review of his, of any, he doesn't get in the door of the CSRA. He's bound by the CSRA, but he has no remedy under the CSRA. Well, we'll see if whether or not your adversary acknowledges that if you're not successful here, whether they recognize that you have a claim that can be filed under the CSRA. The Second Circuit's the only circuit that has addressed a question anywhere similar to yours. And did they conclude that such claims were barred? The Second Circuit in Dotson definitely concluded that. I submit that it is incorrectly decision. I think Mitchum of this court is far closer. That's an executive branch employee. Your man was employed by the Third Circuit, or a judicial employee, so to speak. And so Mitchum is really not, is not precedential for your position. There's no fundamental difference between a judicial employee and an executive employee in this situation. And in fact, I've already lost that issue because in the Court of Federal Claims, I argued the CSRA only applies to executive, not judicial branch employees. And the courts have said, no, you're wrong about that. So there is no distinction for the purposes of this between judicial and executive branch employees. Can you distinguish Dotson at all? Didn't he have a separate claim under a similar EDR, a plan similar to EDR? I don't believe the EDR plan applied in that case either, Your Honor. Okay. So, no, I don't think Dotson is distinguishable on any principled basis. I just think it is wrong. I think the teachings of Elgin that have come out since imply that it is wrong, that you must be able to have judicial review of a constitutional claim. Let me ask you this. If your adversary were to acknowledge that there is jurisdiction under the CSRA for your claim to be heard and adjudicated, would you acknowledge that, would you be satisfied going forward with that type of claim? I think it's too late, Your Honor, because that door has already been closed. Well, I don't know if it's been closed as much as you think it's been closed. It seems to me the government's in a position either they have to fish or cut bait. It's got to go one way or another. Your claim has to be heard somewhere. And if they were to acknowledge that the CSRA is an adequate and full opportunity for your claim to be adjudicated, would that not satisfy your claims? I'm not sure how. Are you talking about going through the Merit System Protection Act? Yes. The District of the Virgin Islands has a plan under which your claim can be heard, as I understand, and adjudicated, and in which, after going through the administrative process, it actually goes to be heard by a judge. Yes, the ultimate decision. Okay. So that's outside of the CSRA. Because the government has taken the position all along that the CSRA is the exclusive remedy. And that forecloses even the DVI-EDR plan. Well, I don't know whether it forecloses. We'll see what the government's position is. Because your claim has to be adjudicated somewhere. And it appears that it's highly unusual for the judicial branch of government, for the court to entertain a lawsuit against itself. Let's put it that way. And Dobson seems to have to nix that concept. And if your claim could be heard under the plan established by the District of the VI, why would that give you full and proper relief? If it could be, we initially wanted to, we looked to that and tried to go there and determined we could not. So I would have no objection conceptually with following that. I don't believe the EDR plan applies. One of the reasons why I asked in the closing of my principal brief is if there's no other remedy, then this should go to the Judicial Council to create a remedy. Because I agree, Your Honor, there has to be a remedy. Which you're talking about the Third Circuit Judicial Council? Yes, Your Honor. Because I don't believe the DVI-EDR plan creates a remedy. But I do think there has to be a remedy. This is not an acceptable circumstance for this court. Let's go back to Dotson a second. Wasn't Dotson's claim, in Dotson, didn't Dotson claim that his termination was racially motivated? Yes, Your Honor, he did. And you're right. Therefore, the EDR plan did apply to him. That EDR plan, it seemed to me, would cover that. That's correct, Your Honor. I had forgotten that. You are absolutely correct. But here, there's no racial discrimination or any type of discrimination alleged. It's just simply terminated without cause in violation of the federal statute. Well, in effect, this lawsuit is your backup position. Your main position would be that if the DVI plan provides review by more than one, that would satisfy your interest. And it would provide for reinstatement as well as back pay. It's not our backup plan. That was your first. Nor our first. We looked to it and determined it did not apply. We had no objection to proceeding through that process. But I would also note that, you know, the first step is Mr. Semper needs to be reinstated because it's a pre-termination hearing that you're entitled to, not a post-termination hearing. And one thing I think also needs to be pointed out with respect to the EDR plan is this is a constitutional claim. And, again, I think Webster V. Doe and Elgin all teach that administrative review of a constitutional claim is not sufficient. There must be judicial review. So Mr. Semper's judicial claim of constitutional denial of due process is not cognizable in the EDR process. That's only cognizable by the court. And review by a judge or the judicial counsel subsequent to that is not what I believe the U.S. Supreme Court considers to be judicial review. Let me ask you a fundamental question that the district court addressed when it handled this case. The district court said in the official capacity suit was barred by sovereign immunity. I think it's incorrect. That's why we have an individual capacity claim. That's why we have an official capacity claim. And that's why we also have the claim against the United States under the APA. And that's why we also have the mandamus claim. I think one way or the other we get around that. It doesn't seem to me that your official or your suit in the personal capacity against Judge Gomez is properly stated because you're asking for prospective relief and he's no longer the chief judge. Your Honor, as I addressed in the brief, there's no reason and I found no case law that says you cannot bring an injunctive claim against a federal official in an individual capacity. And as I pointed out in my brief, he can be substituted for the new chief judge because under Bivens you can't do that when you're seeking damages because it's supposed to be deterrent and you want to deter the person who did the bad conduct. But when you're looking for injunctive relief, we're talking about correcting a wrong. And there's fundamentally nothing wrong with substituting Chief Judge Lewis now to say if we rule in Mr. Semper's favor, we are going to order you to reinstate him. And if you don't, we will hold you in contempt. Well, the waiver of judicial immunity does not go to judicial officers, though. Certainly within that concept of the courts of the United States, the District of the Virgin Islands was included as well, don't you? I mean, how can we get away from the fact that that was a broad exemption but it excluded courts of the United States? It's plain statutory interpretation, Your Honor, that courts of the United States have a very well-known Supreme Court-established definition. And the District Court of the Virgin Islands does not fall within that definition. Well, if they said the Sentencing Commission was a court of the United States, certainly the DVI is going to be, the District of the VI is going to be a court of the United States within the purview of that statute. I disagree, Your Honor. The definition of court of the United States is well-established. And we have pointed out in the briefs the numerous statutes where Congress is well aware of that distinction and says we're going to include the District Court of the Virgin Islands in this statute and other cases where they don't. Well, you don't have to win on every point in order to prevail for your client. Absolutely not. Let me ask this. I'll be happy to win on one. Aren't you really reading too much into the court of the federal claims discussion of the DVI plan? Aren't you taking a license with controlling that as putting you outside the making a claim under the plan established by the District of the Virgin Islands? No, Your Honor. It was the position of the United States in the court of federal claims. I have cited the oral argument or tape from the court of the federal circuit where they clearly state he had no administrative remedy, but the attorney said I don't believe he has an administrative remedy, and also say in the same oral argument he has no judicial remedy. That has been the position of the United States. I sort of sympathize with you. You seem to have gotten a little bit of a runaround, I would say. Without question. Okay. Well, an exercise that may be good for you but not in the judicial context, because if you read the court of the federal claims, what relevance does that have to the current appeal where the federal circuit then did not address the scope of the DVI plan? They really didn't address it. In fact, they didn't find it significant that the federal circuit didn't even mention the remedial scheme adopted by the District of the Virgin Islands. A fundamental basis for getting into the court of federal claims is that you don't have another remedy, and so I devoted a significant portion of my briefing in the court of federal claims to the fact that he had no administrative remedy, and the United States' position was he does have an exclusive remedy. It's the CSRA. So I think the parties have taken that position. The court of federal claims ruled on that decision. The court of federal circuit did not reach it, but that does not change the fact that that's the law of the case, and under judicial estoppel, the very point you make about getting someone the runaround is the ground for asserting it. Justice Simpson, let us – Judicial estoppel does not create jurisdiction. You acknowledge that? Absolutely. And I acknowledge you sort of got a little runaround here, but if the federal government were to acknowledge that you have the ability to file a claim under the DVI plan, that would satisfy everything, wouldn't it? What's all the shooting about if you could file a claim under the DVI plan? As long as there was no impediment, a time bar, or anything else to asserting it now, I would agree. We'll call you back in rebuttal, and let's get to the federal government. Thank you. Ms. Marcus. Thank you, Your Honor. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent the federal defendant appellees. Now, Ms. Marcus, Mr. Semper has to be able to go somewhere to get this claim adjudicated. And we believe that Judge Bartle was correct, that he could have gone to the Virgin Islands Employment Dispute Resolution Plan, and it does cover termination claims. And as the Dotson case explained, that's why this case also doesn't fit within Webster v. Doe's standard, because there is judicial review under this plan. As the Court recognized, there's review by the Third Circuit Judicial Council. So this would fall squarely within Elgin, and we do think the district court properly dismissed the complaint. Mr. Simpson says that terminations aren't covered under the EDR plan. Well, we attached the plan in the addendum to our brief, and we think that there are several pieces of evidence that show how it is covered. First, on page 1, which is page 8A of our addendum, the coverage of the plan includes personnel practices, and it says including recruitment, hiring, promotion, and advanced. It doesn't say including what? It doesn't mention termination there, but it says the word including is what I'm focusing on. It doesn't say limited to. And what also, if you look at the remedies, reinstatement and back pay are listed as remedies, and that would clearly include a termination if someone is reinstated. Let me ask you a very simple question. Will you acknowledge, I would even say stipulate, that if he were to file a claim under the DVI plan, that his claims are covered, number one, are covered by the DVI plan, number two, that they are not time barred if he were to file them seasonally after this proceeding is concluded, and they're not otherwise barred through some procedural requirement of the DVI? Are you willing to acknowledge that? Because if you're not, quite frankly, I agree with Judge Fischer, he's got to go somewhere, and he's here, and if he can't go there, we're not going to cut him loose. Well, Your Honor, we do and have. Here are my three matters which I'd like you to acknowledge, yes or no to. Yes. No equivocation. Yes to one, which is that the plan does cover his claim. Not time barred? I cannot make that determination. Only the Third Circuit Judicial Council, ultimately. That is not my role. Well, your litigation posture would be what? That it is or is not time barred? We don't know until we see what he says when he submits a request for counseling, and if and when he does. I mean, we note that he has not. He said that he looked at it and determined that it did not apply, but we don't see in the record any request for counseling actually filed. He could go back and do that now. Yes, he could go back now, file one, but there is a time limit, and he would have to there make a record, and it's up to the judiciary. You know, it sounds like he already got enough of a run around. I mean, he got enough exercise, so let's get to the point here, you know. I hear you're equivocating with me, and I can tell you, I don't speak for my two colleagues, but he's got to go somewhere, and he's here, and if he can't go there. Well, he can go there, and we do say he can't. And get a run around. Can he go there and get a run around? Well, I think he – and, Your Honor, I apologize, but I can't make any stipulation without seeing the reasons. And, again, it's not my determination. There's a very – the judicial conference did a model plan. The Third Circuit modeled its plan after that, and the Virgin Islands District Court modeled its plan after the Third Circuit model plan. And it's a very carefully crafted plan with procedures in it, and there is a judicial officer who will make that initial determination about whether it's timely. If Mr. Semper did not like that interpretation, he can then file a written – he can file a petition for review with the Third Circuit Judicial Council, and at that point there would be a record of what – How about the third one? Otherwise barred in any procedural or other purpose? I can say not that I know of. I haven't – I don't – I haven't seen – these are very different from court cases, which we normally analyze, and I wouldn't want to – Part of the reason, actually, in Dotson that the Second Circuit ruled the way it did was it showed how Congress was very concerned with separation of powers and the executive branch not getting too involved in the judiciary's personnel practices. And this plan is administered by the Judicial Council, and I don't know – I do – you know, there is a time limitation in here. I can see that on its face. I would note for petitions for the Third Circuit Judicial Council, the court does review these petitions for review so long as they are, it says, a proper petition for review. So it says here, too, that the Third Circuit Judicial Council can give the petitioner the opportunity to correct the deficiencies within 10 days. So there obviously are some procedural requirements in this process, but – excuse me – there are also points in the process where the Judicial Council itself or the presiding judicial officer can give petitioners a chance to correct procedural. Well, I guess, you know, one of the things which confuses me a little bit about your position, whether it be stated this morning or in your brief, is that in this suit, you know, what Semper is asking for is a declaratory judgment and or reinstatement. And the district court, Judge Bartle sitting by assignment here, concluded that the official capacity suit was barred by the doctrine of sovereign immunity. I mean, if what you're saying is correct about the EDR plan, I mean, couldn't we just send this back indicating that it's not barred by sovereign immunity and direct the court to make some declaration as to whether it is or isn't covered by the EDR? If it isn't covered by the EDR, consider the reinstatement. I mean, this is not the executive branch getting into the judicial branch's business. You know, Mr. Simpson's asking the judicial branch to give Mr. Semper at least a hearing to determine whether he's entitled to some relief. Well, Your Honor, I do think that you can say, as Judge Bartle does, that this is covered by the plan, but there is no jurisdiction to rule on any of Mr. Semper's claims because there is no waiver of sovereign immunity under the APA. That's a key difference with Mitcham, even before Elgin. The judiciary is not an agency under the APA. We're not the executive branch. If we disagree with you on the APA, we disagree with your argument on the APA. Then I think there would still be CSRA preclusion. So there would still be, and that's under the Elgin case because Mr. Semper could have gone to the administrative remedy. You would have us rule in a CSRA matter that even though a case may not be covered by an EDR plan, that a judicial employee would have no remedy. Your Honor, our position is that it is covered by the EDR plan. I said if it wasn't, if we concluded it wasn't covered by the EDR plan, you would then have us rule that the judicial employee like Mr. Semper had no remedy. Oh, I'm sorry. I thought you said if I disagreed with you on the APA. Okay. If the court were to rule that it was not covered, then I think we are in a much more difficult situation because then you run into a conflict between two fundamental constitutional principles. I mean, you do have the Webster principle about constitutional claims getting a hearing. On the other hand, you have sovereign immunity, and Webster did arise in the executive branch APA context. It was actually an APA case, and if you go through step by step, there is a serious constitutional question about whether there's any jurisdiction here. However, Congress was well aware of the EDR plans when it made the intentional decision not to extend the CSRA review provisions to judicial branch employees, and we think Congress has essentially recognized by when the judicial conference came back to Congress and said, we don't think you need to extend the Congressional Accountability Act, for example, to judicial employees because we have this internal process which includes judicial review. So Congress, we think you can look to congressional intent, and part of that congressional intent would include coverage by the EDR plan because Congress made the decision knowing about this administrative process from the judiciary, and there were, in fact, after Fausto, Congress decided to extend the protections of the CSRA, and again, at that point, purposely didn't include judicial branch employees, and Congress took administrative office of the U.S. Courts personnel out of CSRA coverage. So there are a lot of the dots in court wrote a very careful, thorough opinion which went through all of the factors. Let me ask this. Suppose we were to hold this case at abeyance, reserve it on it, pending the appellant filing a claim in the District of the Virgin Islands, testing whether or not his claim would be processed there, whether there's a statute of limitations problem or other procedural difficulties. Why could we satisfy ourselves that he has some relief if he has no relief here, that just hold this case pending his going to the filing claim under the plan of the District of the Virgin Islands and wait and see whether or not that goes forward or whether or not he's going to get a further work out based on the court of claims opinion, which I think is a little bit, he's overstating its entire breadth. So why wouldn't that be a way to satisfy that he has some relief and not go back down if he were to lose here and we dismiss it and find that he has nothing under the DVI plan? Your Honor, I think the proper course for this court would be to affirm the judgment of the district court, not to hold this in abeyance because the district court was correct that there's no jurisdiction over any of the claims and in fact that he does not state a claim for relief in the individual case. But then he goes to the DVI plan. If they exclude his claim there, he's out of business completely. Well, given this, if he came with an opinion from this court and with Judge Bartle's opinion saying that the plan does apply, I would be surprised if that happened. But the other, he at, I think it would be better for the court if he, well, it's not, I'm sorry, I think the court lacks jurisdiction. So it should not hold the case in abeyance pending something that, in fact, if you have a procedural due process clause, you need to exhaust your remedies before you come into court. And one of the reasons for that is precisely so the court can see after the person goes through the process. And at that point, there'd be a record created. And so I think there really is no jurisdiction here for a number of reasons. And, again, with the individual capacity claims. Well, if we disagree with the jurisdiction, if our purpose is that the Virgin Islands constitutes a court of the United States under the APA, we say this is a court of the United States under the APA, why can't we hold this case and see what happens when he goes to the DVI and make a determination at that time whether or not this case is, if he can go forward under the DVI plan, I grant you that we shouldn't hear the case. But it appears he's been to every case, he's been to every court, he's been to everything, and he gets to run around everywhere he goes. Your Honor, under the APA, the exceptions, we think it's very clear that for purpose of the APA, the Virgin Islands Court is a court of the United States. But if it's not, Judge Bartle is correct that to the extent it isn't, then it would be part of the territorial government of the Virgin Islands. It's one or the other. And I think that even if there's no jurisdiction under the APA, the CSRA precludes the claim. So I think, and again, the individual capacity claims don't even state a claim because you can't get reinstatement and declaratory relief from an individual in his personal capacity. So that dismissal would have to be affirmed. And I submit that here the court could agree with Judge Bartle that it is covered. Let me ask you this one question. Sure. You talked about Congress and what Congress intended to do here. How do you explain 3602, 18 U.S.C. 3602A? How do you explain them giving a specific exception to probation officers to say that they could only be fired for cause, and yet saying, as you've said here, that it's possible that a probation officer like Semper could have no remedy? Your Honor, I think he does have a remedy, and I think Congress, again, was aware of these EDR plans and that if you look at the provisions, he will – But yet the problem with – and I recognize what you're saying. My problem with the EDR plan is the fact that as specific as they are, they never use the word termination. But – And yet there's a – I mean, we know that there is a principle that Congress has reflected that court employees are terminable at will. Except, they said in 3602A, probation officers aren't. They have to be terminated. They can only be fired for cause. That's right, Your Honor, and I think that the procedures here, by allowing for back pay and reinstatement and on the face of the plan itself, recognize that the judicial officers in administering this plan could, in the case of a probation officer as opposed to other judicial employees, that the 3602 would inform the hearing and the proceedings and that it does have a cause requirement. And I think that is very important in whatever happened in the administrative process, and that's where you would have the merits argument. And as reflected in our brief, this is a motion to dismiss, so all the facts stated is true, but we certainly think here Mr. Semper was terminated for cause. But that is something that if you file the request for counseling, that first gets to be resolved informally. And in the hearing, the probation officer would have a different standard than other judicial branch employees who could be fired at will. I think that's right, that if you can be fired at will and you don't have another statutory or constitutional right, for example, anti-discrimination and equal protection rights, then if you don't have that, you wouldn't have a claim on the merits. But clearly the Third Circuit Judicial Council and the judicial officer presiding have the authority to award this relief. And we think the court can certainly say that the plan does apply, and that would best put this case on all fours with Dotson. All right, Ms. Marcus, thank you very much. We'll have Mr. Simpson back for some brief rebuttal since you had plenty of time in the front end. Yes, thank you. Thank you, Your Honor. To address a few points that were raised, we would have no objection withholding it in advance so that Mr. Semper could pursue an EDR remedy. One important difference I would note is the EDR is supposed to be a prompt resolution of a plan, and Mr. Semper has now incurred legal fees through four different courts, and the EDR plan does not provide for attorney's fees. So it really will not make him whole at this point or even close to it. Why have you not gone to the EDR plan? Your Honor, it's not in the record because of the way this argument arose for the first time in the opinion by Judge Bartle, with no argument by either side that it applied. But I corresponded with the, I believe it's the circuit librarian who is the administrator of the plan, and I also corresponded with Chief Judge Gomez in an attempt to resolve this. I was informed that my reading of the plan was correct. Now that's not in the record, but I represent to you that that's what happened. And having confirmation that my reading of the plan was correct, and one other thing, sometimes you get too familiar with the case. It's not in our briefs. Here it is in our briefs in the Court of Federal Claims and the Federal Circuit. After the Congress enacted 320 or 3601, the Judicial Conference of the United States promulgated a model adverse action plan for probation officers because it recognized that the EDR plans of the courts do not apply to termination. And I can provide the court with a citation to that. As far as I can determine, it was adopted by two courts across the United States. It's very hard to find courts' EDR plans. I found a reference to it in, I believe, Dotson in a footnote, and I think I found an Eastern District of California has adopted it. But I cannot find any other court that has adopted it, and certainly the DVI did not adopt it. So every reasonable reading of the plan was that it does not apply to terminations. To address specifically the argument that while it covers reinstatement, if you're fired because you're a whistleblower, if you're fired because of illegal discrimination, you get reinstatement under the plan. So that's why reinstatement is in there. The reference to, on page 1 of the plan, to personnel practices including recruitment, hiring, promotion, and advancement does not include temporary advancement, which is one of the personnel practices listed in Chapter 3. So a reasonable reading of including is it includes everything that is listed in Chapter 3, which includes the additional one of our temporary appointments. So I think it's unreasonable to read that this applies to anything that we decide it applies to at the appropriate time. And the plan also talks to giving rights to the, enforcing the rights that are enumerated in the plan. There's no penumbra here. There's no inference. It's what's enumerated in the plan. So I've covered the points I wanted to cover, and I appreciate the extra time I had in my first time, so I will answer any other questions you have. Otherwise, sit down. Thank you, Mr. Simpson and Ms. Marcus. We thank both of you for excellent arguments and a well-briefed case with a lot of complications, and we'll take the matter under advisement. Thank you, Your Honors.